# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No. 23-1636

---

DERRICK DAVIS

PLAINTIFF-APPELLANT

v.

ROBERT BELL, ET AL.

DEFENDANTS-APPELLEES

---

Appeal from the United States District Court
for the Eastern District of Arkansas

District Court Case No. 4:21-CV-00763-JM

The Honorable James M. Moody, Jr.
United States District Judge

---

## PLAINTIFF-APPELLANT'S OPENING APPELLATE BRIEF

---

Michael J. Laux
Eastern District of Arkansas Bar No. 6278834
LAUX LAW GROUP
400 W. Capitol Avenue, Suite 1700
Little Rock, AR 72201
Telephone: (501) 242-0750
Email: mlaux@lauxlawgroup.com

## SUMMARY OF THE CASE

The purpose of the instant appeal is to challenge the district court's grant of summary judgment to Defendants-Appellees in the underlying matter, *Davis v. Bell, et al.*, 4:21-CV-763-JM, a civil rights case alleging Fourth Amendment and Monell institutional liability in the September 6, 2017 explosive "no-knock" raid of the home of Plaintiff-Appellant Derrick Davis. It is Plaintiff-Appellant's position that he presented sufficient evidence to defeat summary judgment but that the district court.

Plaintiff-Appellant respectfully requests oral argument and that the parties each be granted thirty (30) minutes for oral argument.

Appellate Case: 23-1636    Page: 2    Date Filed: 07/20/2023 Entry ID: 5297839

# TABLE OF CONTENTS                                                    PAGE

SUMMARY OF THE CASE……………………………………………...……..i

TABLE OF AUTHORITIES……………………………………………..……...iv

JURISDICTIONAL STATEMENT……………………….…….….……..1

STATEMENT OF THE ISSUES…………………………….……………….2

STATEMENT OF THE CASE……………………………….…..….……...3

SUMMARY OF THE ARGUMENT…………………………….…..…....9

ARGUMENT…………………………………………………………...…11

   I.     THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE IT REPEATEDLY ACCEPTED MOVANTS' FACTS OVER NON-MOVANT'S FACTS………….…………..….12

   II.    THE DISTRICT COURT ERRED IN ACCEPTING AND NOT REJECTING ROBERT BELL'S AFFIDAVIT AND EXHIBIT "A" AS HEARSAY…………………………………………………...21

   III.   THE DISTRICT COURT ERRED IN DISREGARDING PLAINTIFF'S EXPERT'S POLICE PRACTICES UNREBUTTED EXPERT OPINIONS AND THE UNREBUTTED OPINIONS OF A FORMER LRPD CHIEF OF POLICE CRITICAL OF THE DEPARTMENT……25

   IV.   THE DISTRICT COURT ABUSED ITS DISCRETION IN AWARDING ATTORNEY'S FEES BECAUSE DEFENDANTS FAILED TO PROVE ANY ASPECTS OF THEIR REQUEST WERE REASONABLE……...27

CONCLUSION……………………………………………………...28

CERTIFICATE OF SERVICE…………………………………………...28

VERIFICATION………………………………………………….....29

CERTIFICATE OF COMPLIANCE…………………………………………..30

Appellate Case: 23-1636   Page: 3   Date Filed: 07/20/2023 Entry ID: 5297839

ADDENDUM……………………………………………………………….....31

Appellate Case: 23-1636    Page: 4    Date Filed: 07/20/2023 Entry ID: 5297839

# TABLE OF AUTHORITIES

CASES:                                                                                          PAGE

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)……………………....11, 12

*Andrews v. Fowler*, 98 F.3d 1069 (8th Cir. 1996)……………………………..…11

*Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939 (1989)……………..….…27

*Blum v. Stenson*, 465 U.S. 886 (1984)…………………………………………...27

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)………………………..………11

*DG&G, Inc. v. FlexSol Packaging Corp. of Pompano Beach*,
576 F.3d 820 (8th Cir. 2009)……………………………………………….…25

*Erickson v. Farmland Indus.*, 271 F.3d 718 (8th Cir. 2001)…………....22, 23-24

*Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307 (8th Cir. 1993)…………………22

*Franks v. Delaware*, 438 U.S. 154 (1978)………………………………….....13

*Hartnagel v. Norman*, 953 F.2d 394 (8th Cir. 1992),…………………..…...…11

*Howard v. Columbia Public School District*, 363 F.3d 797
(8th Cir. 2004)…………………………………………………………………21

*Hunt v. Cromartie*, 526 U.S. 541, 119 S. Ct. 1545 (1999)……………..…...…12

*Kuhn v. Wyeth, Inc.*, 686 F.3d 618 (8th Cir. 2012)………………………….…25

*Martin v. DaimlerChrysler Corp.*, 251 F.3d 691 (8th Cir. 2001)…………….....11

*Mays v. Rhodes*, 255 F.3d 644 (8th Cir. 2001)…………………………….…...22

*Tolan v. Cotton*, 572 U.S. 650, 134 S. Ct. 1861 (2014)……………….………12

*United States v. Reinholz*, 245 F.3d 765 (8th Cir. 2001)…………….…………13

iv

*United States v. Roberson,* 439 F.3d 934 (8th Cir. 2006)…………………….….13

*Vasudevan Software v. MicroStrategy, Inc.*, 782 F.3d 671
(Fed. Cir. 2015)………………………………………….………………………..…25

*Wealot v. Brooks*, 865 F.3d 1119 (8th Cir. 2017)……………………………….…15

*Wiley v. United States*, 20 F.3d 222 (6th Cir. 1994)……………………………...24

*Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, (8th Cir. 2005)…………….…11

*Z.J. v. Kan. City Bd. of Police Comm'rs*, 931 F.3d 672 (8th Cir. 2019)…….……16

STATUTES:                                                                                          PAGE

Title VII of The Civil Rights Act of 1964,
42 U.S.C. § 1983..……………………………………………………………....…1, 3

COURT RULES:                                                                                   PAGE

Federal Rule of Civil Procedure 56(a)…………………….………………..…11

Federal Rule of Civil Procedure 56(e)……………………………………...21

Federal Rule of Evidence 702…………………………………............25

Federal Rule of Evidence 801(c)…………………………………….……….24

v

## JURISDICTIONAL STATEMENT

### Federal Court Jurisdiction

This cause of action was brought pursuant to 42 U.S.C. § 1983. Federal court jurisdiction was invoked pursuant to 28 U.S.C. §§ 1331 and 1367. Appellant, Derrick Davis contends that appellees, Robert Bell, Zachary Hardman and Mark Ison knowingly violated his Fourth Amendment right to be free from unreasonable state entry into his home. Mr. Davis also alleges claims sounding in *Monell* and supervisory liability against the City of Little Rock and Kenton Buckner. Lastly, Mr. Davis alleges a civil conspiracy between and among all individual defendants to violate his Fourth Amendment rights.

### Appellate Court Jurisdiction

The district court granted defendants' summary judgment motions on March 3, 2023. (Add. 4 R. Doc. 57, at p. 1) The court entered judgment on March 3, 2023. (Add. 21 R. Doc. 58) The district court's order constituted a final decision and, therefore, Mr. Davis appeals to this Honorable Court pursuant to 28 U.S.C. § 1291.

### Timeliness

Pursuant to Rule 4 of the Federal Rules of Appellate Procedure, a party desiring to appeal a final decision of a district court must file a Notice of Appeal within thirty (30) days of the entry of the order upon which appeal is sought. On

1

April 3, 2023, Mr. Davis timely filed his Notice of Appeal with the district court. (Add. 1 R. Doc. 59, at p. 1)

<u>Appealability</u>

The judgment entered by the district court on March 3, 2023 is a final order which disposed of all the claims as raised by the parties.

<u>STATEMENT OF THE ISSUES</u>

**THE DISTRICT COURT ERRED IN GRANTING DEFENDANTS' SUMMARY JUDGMENT MOTIONS**

*Tolan v. Cotton*, 572 U.S. 650, 134 S. Ct. 1861 (2014)

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986).

*Erickson v. Farmland Indus.*, 271 F.3d 718 (8th Cir. 2001)

**THE DISTRICT COURT ERRED IN DISREGARDING PLAINTIFF'S EXPERT'S OPINIONS**

*Vasudevan Software v. MicroStrategy, Inc.*, 782 F.3d 671, 682 (Fed. Cir. 2015).

**THE DISTRICT COURT ABUSED ITS DISCRETION IN AWARDING ATTORNEYS' FEES TO DEFENSE COUNSEL**

*Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939 (1989)

Appellate Case: 23-1636     Page: 8     Date Filed: 07/20/2023 Entry ID: 5297839

## STATEMENT OF THE CASE

### Procedural History

Derrick Davis brought his cause of action pursuant to Title VII of The Civil Rights Act of 1964, 42 U.S.C. § 1983, alleging Fourth Amendment violations resulting from a September 6, 2017 "no-knock" search warrant raid of his home which involved the detonation of explosive devices to forcibly enter the home. Mr. Davis named as defendants narcotics detectives, Robert Bell ("Bell"), Zachary Hardman ("Hardman") and Mark Ison ("Ison,") as well as Kenton Buckner ("Buckner"), the chief of the Little Rock Police Department ("LRPD") in 2017, and the City of Little Rock ("City").

Count I alleges Fourth Amendment violations occurring prior to the no-knock raid, including the submission of false affidavits and willfully using unreliable cooperating individuals ("CIs") or informants. (App. 20-21 R. Doc. 1, at ¶¶ 53-58) Count II also alleges Fourth Amendment violations but relates to the unwarranted explosive physical breach of Mr. Davis' home during the narcotics raid. (App. 20-24 R. Doc. 1, at ¶¶ 48-49, 66-69; App. 181 R. Doc. 34-2, at 32:8-11) Count III sounds in *Monell* institutional liability and alleges the existence of an unconstitutional policy conceived, maintained and enforced by LRPD chiefs of police—including Buckner—which required all search warrants involve SWAT and

3

explosive entry as a matter of course, regardless of the circumstances.  (App. 24-27 R. Doc. 1, at ¶¶ 70-78)

Count IV alleges a civil conspiracy—or agreement—between and among the defendants to execute an unlawful explosive no-knock raid on Mr. Davis' home and to conceal the fact that despite LRPD's express policy on search warrant execution, the *de facto* policy was a *Monell* directive emanating from the office of the chief and requiring SWAT tactics in the execution of narcotics warrants.  (App. 27-28 R. Doc. 1, at ¶¶ 79-83)  Count VIII alleged single act supervisory liability against Buckner for permitting the no-knock raid on Mr. Davis' home.  (App. 31-32 R. Doc. 1, at ¶¶ 99-103)

On November 29, 2022, during discovery, due to a scheduling error, Mr. Davis failed to attend his deposition which was scheduled via agreement of the parties.  (App. 40-41 R. Doc. 24, at pp. 6-7)  On December 7, 2022, Bell, Hardman and Ison filed a motion for sanctions against Mr. Davis.  (App. 35 R. Doc. 24)  In the motion, unspecified defense counsel claimed they "expended numerous hours preparing for Plaintiff's deposition." (App. 40 R. Doc. 24, at p. 6)  Mr. Davis' deposition promptly rescheduled and proceeded on December 19, 2022.  (App. 173 R. Doc. 34-2)  With Bell, Hardman and Ison's motion for sanctions still pending, defense counsel for those defendants boycotted Mr. Davis' deposition and none of them attended the deposition.  (App. 174 R. Doc. 34-2)  Separate counsel for the City and Buckner

4

examined Mr. Davis. (App. 174 R. Doc. 34-2 at p. 1) Mr. Davis reimbursed defense counsel for the court reporter.

On January 11, 2023, defendants filed their motions for summary judgment. (App. 58 R. Doc. 57; App. 90 R. Doc. 31) Mr. Davis responded to both motions. (App. 127 R. Doc. 34; App. 567 R. Doc. 38) Attached to Mr. Davis' responses were more than twenty-five (25) exhibits, including sworn deposition testimony, unrebutted police practices expert opinions and uncontradicted declarations from a former chief of police for the Little Rock Police Department (LRPD) and Kenton Buckner successor. (App. 538 R. Doc. 34-22; App. 436 R. Doc. 34-13; App. 564 R. Doc. 34-26)

On February 7, 2023, the district court granted defendants' motion for sanctions, issuing a single paragraph order. (Add. 20 R. Doc. 46, at p. 1) On March 3, 2023, the court granted defendants' summary judgment motions. (Add. 4 R. Doc. 57, at p. 1) Mr. Davis appeals the dismissal of five (5) of the eight (8) counts of his complaint: Counts I, II, II, IV and VIII.

Statement of Facts

At all relevant times, including August 2017, the constitutional standard for search warrant execution was "knock-and-announce," whereby officers employing this method knock (pound) on the door of the target residence and demand immediate entry. If the officers are not granted immediate entry by the occupants—

5

typically after a period of 25 seconds—they will commence a forced, physical entry of the target residence. (App. 366 R. Doc. 34-4, at 59:16-60:8) One exception to the "knock-and-announce" standard is the so-called "no-knock" search warrant execution, whereby officers are allowed to bypass announcing themselves and to breach the target residence via forced, physical entry. No-knock warrants are an exception to the norm and they should not be prepared in boilerplate manner without particularized circumstances in order to circumvent judges' scrutiny. (App. 460-461 R. Doc. 34-13, at pp. 24-25)

The LRPD narcotics unit is responsible for conducting narcotics raids and obtaining search warrants, including search warrants which require forced entry execution. (App. 163-165 R. Doc. 34-1, at pp. 66-68) A narcotics raid is defined as the execution of a search warrant utilizing forcible entry with the goal of seizing narcotic contraband. (App. 163 R. Doc. 34-1, at 66)

In August 2017, the LRPD had a policy—Tactical Operations—which governed narcotics raids and search warrants that require forcible entry. (App. 163 R. Doc. 34-1) Per this policy, the unit supervisor responsible for obtaining the search warrant is the supervisor in charge. (App. 163 R. Doc. 34-1, at p. 66) The unit supervisor is responsible for all tactical facets of the search warrant execution, including disseminating information on strategies, determining operational

6

procedures for surveillance, arrests and execution of narcotics or tactical raids. (App. 165 R. Doc. 34-1, at p. 68)

In August 2017 (and effective since at least April 2014), there was a mandate at the LRPD from the office of the chief of police pertaining to the execution of search warrants. (App. 537 R. Doc. 34-21) This mandate is reflected in an official LRPD memorandum circulated within the department in April 2014. (App. 537 R. Doc. 34-21) The memo expressly articulates the existence of "a mandate from the Office of the Chief of Police that the SWAT team execute all search warrants." (App. 537, R. Doc. 34-21) At the LRPD, to involve SWAT in the execution of search warrants is to involve explosive device detonation based on nearly every affidavit and warrant in the record. (App. 461 R. Doc. 34-13, at p. 23)

At all relevant times, LRPD narcotics officers understood the mandate for SWAT involvement in all search warrant executions reflected in the April 2014 was a controlling directive with the full force of policy. (App. 548-549 R. Doc. 34-22, at 41:8-42:4) This blanket mandate requiring SWAT involvement regardless of the circumstances would appear to be in conflict with the express language of LRPD's tactical policy which gives the unit supervisor discretionary latitude on how to execute search warrants. (App 163-165 R. Doc. 34-1, at 66-68)

In 2017, Bell, Hardman and Ison were LRPD narcotics detectives. The LRPD narcotics unit is a small, closely-knit group. (App. 358 R. Doc. 34-4, at 28:7-11) It

7

is important to note that all narcotics detectives work on, and are involved in, each other's narcotics cases. (App. 368 R. Doc. 34-4, at 66:11-16 ("…we all went on the same warrants")).

In August 2017, Bell claims to have arranged a controlled buy at Mr. Davis home with a now-identified long-time CI, Kenneth Ray Robinson ("Robinson"). (App. 405 R. Doc. 34-6, at p 1) It was known at the LRPD since 2012 that Robinson was unreliable because not only had he threatened a prosecutor with violence while being held on a deception crime charge but he also attempted to frame another inmate for the death threats he made. (App. 643-644 R. Doc. 34-16, at pp. 19-20) Robinson had a history that not only showed he was unreliable but it related to setting someone up for a crime they did not commit for personal gain. Despite this, Robinson continued to be a narcotics CI for years, including in September 2017.

Bell's search of Robinson's person before the controlled buy attempt at Mr. Davis' home was cursory "pat-down" insofar as Bell did not bother to check Robinson's shoes, socks or other obvious areas for small bundle contraband. (App. 269-272 R. Doc. 34-3, at pp. 67-70) The search of Robinson was, thus, inconsistent with police protocol because it allowed for Robinson to taint the buy and falsely implicate Mr. Davis by bringing contraband into the process and claiming it was purchased from Mr. Davis. (App. 453-454 R. Doc. 34-13, at pp. 18-19) Bell testified

Appellate Case: 23-1636    Page: 14    Date Filed: 07/20/2023 Entry ID: 5297839

an understanding of the risk posed by his chosen method: it could lead to the arrests of people who should not be arrested. (App. 269-272 R. Doc. 34-3, at pp. 67-70)

In September 2017, Mr. Davis, a college-educated African American man, was a self-employed barber. (App. 177 R. Doc. 34-2, at pp. 13-14) At that time, Mr. Davis lived with his fiancé who is now his wife. (App. 180 R. Doc. 34-2, at 2:7-18) Mr. Davis testified that on two (2) separate occasions in late August to early September 2017, a black male, now known to be Robinson, came to his front door and engaged in odd small talk for a few moments. (App. 198 R. Doc. 34-2, at 97-100. A few days after the second of these encounters, Mr. Davis' home was violently breached with explosives and raided by heavily armed LRPD officers. (App. 181 R. Doc. 34-2, at 32:8-11. Mr. Davis was arrested after narcotics found marijuana he possessed for personal consumption—and not the large amounts of cocaine they claimed would be seized—and jailed at Pulaski Co. jail. (App. 604 R. Doc. 39, at p. 7)

## SUMMARY OF ARGUMENT

The district court erred in granting summary judgment, and Mr. Davis can demonstrate the error in multiple ways. First, the court failed to adhere to the axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor. Second, in dismissing Mr. Davis' case, the court accepted—indeed, heavily relied upon—an

9

impermissible double-hearsay document submitted by Bell, offered for the truth of the matter asserted. Third, the court utterly ignored the unrebutted expert police practices opinions submitted by Mr. Davis in the form of a 53-page, meticulously presented Rule 26 report from a retired chief of police with a wealth of experience in police issues pertinent to his claim, including no-knock warrant service. (App. 436 R. Doc. 34-13, at pp. 1-53)

Moreover, in awarding defendants attorney's fees pursuant to Federal Rule of Civil Procedure 37, the district court abused its discretion, a charge illustrated in several ways. First, the court awarded attorney's fees per Rule 37 despite insufficient evidence of sanctionable conduct. Second, in its single paragraph order, the court failed to determine the amount of the fees sought and other crucial information, such as whether any work claimed related to the situation alleged. (Add. 20 R. Doc. 46, at p. 1)

Third, the court did not determine the number of hours defense counsel claimed and failed to determine whether any hours claimed were reasonable given the circumstances. (Add. 20 R. Doc. 46, at p. 1) In short, rather than perform lodestar analysis—which reliably determines reasonable attorney's fees—the court instead disregarded its obligation and entered an order awarding defendants unknown and undeterminable fees.

10

## ARGUMENT

### Standards

The district court's granting of an appellee's summary judgment motion is subject to a *de novo* review. See *Andrews v. Fowler*, 98 F.3d 1069 (8th Cir. 1996). Per Rule 56(a), a court may grant summary judgment only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). This means showing that there is an absence of evidence to support the nonmoving party's case. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).

A fact is material when it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992), or when a reasonable jury could return a verdict for the non-moving party on the question, *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005).

A court's award of sanctions under Rule 37 of the Federal Rules of Civil Procedure are reviewed for abuse of discretion. *Martin v. DaimlerChrysler Corp.*, 251 F.3d 691, 694 (8th Cir. 2001).

11

I.  THE DISTRICT COURT ERRED IN GRANTING SUMMARY
    JUDGMENT BECAUSE IT REPEATEDLY ACCEPTED MOVANTS'
    FACTS OVER NON-MOVANT'S FACTS

When reviewing a motion for summary judgment, a trial court should be
guided by certain principles.  First, the court's role is not to weigh the evidence but
instead to assess the threshold issue as to whether there exists a genuine issue of
material fact requiring the matter go before a jury.  *Anderson*, 477 U.S. at 249.
Second, the ultimate standard of proof is relevant for proposes of ruling on summary
judgment, such that, when ruling on a summary judgment motion, the trial court
must "bear in mind the actual quantum and quality of proof necessary to support
liability."  *Anderson*, 477 U.S. at 254.

Third, the trial court must resolve all reasonable inferences and doubts in the
non-moving party's favor and construe all evidence in the light most favorable to
the non-moving party.  See *Tolan v. Cotton*, 572 U.S. 650, 134 S. Ct. 1861 (2014);
see *Hunt v. Cromartie*, 526 U.S. 541, 550-55, 119 S. Ct. 1545 (1999).  Indeed, "[t]he
evidence of the nonmovant is to be believed, and all *justifiable inferences* are to be
drawn in his favor."  *Anderson*, 477 U.S. at 255.  Fourth, the trial court cannot decide
any issues of credibility.  See *Anderson*, 477 U.S. at 255.

A.  The District Court Erroneously Accepted Defendants' Facts Despite Mr.
    Davis' Contradicting Facts

As a preliminary matter, virtually none of the facts stated above were included
in the district court's recitation of facts and nearly all of those facts create genuine

12

issues of material fact with defendants' facts selected by the court. In short, the district court did precisely what Mr. Davis claims Bell did in his no-knock affidavit to the judge in the underlying case: that is, to cherry-pick the seemingly supportable facts to make a case and reinterpret the disputed facts that cannot be ignored, while ignoring others. The following non-exclusive findings in the court's order are in error because they relate to material issues and are hotly disputed.

1. The Court Found that There was No Evidence of false affidavits to establish *Franks* Violation Despite Considerable Evidence Presented by Mr. Davis

Information in an affidavit to establish probable cause must be truthful in the sense that the information put forth is "believed or appropriately accepted by the affiant as true" otherwise it is invalid. *Franks v. Delaware*, 438 U.S. 154, 165 (1978). A search warrant based upon an affidavit containing "deliberate falsehood" or "reckless disregard for the truth" violates the Fourth Amendment. *Franks*, 438 U.S. at 171. To prevail on a *Franks* claim, a plaintiff must show: (1) that a false statement was included in an affidavit knowingly and intentionally or with reckless disregard for its truth; and (2) that the affidavit's remaining content is insufficient to establish probable cause. *United States v. Roberson,* 439 F.3d 934, 939 (8th Cir. 2006).

Because the *Franks* standard requires a reasonable showing of causation, *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001), Mr. Davis went so far as to visually demonstrate the lack of probable cause reflected in Bell's affidavit

13

after the false statements contained in the document are stricken. (App. 405 R. Doc. 34-6) Despite the effort and Mr. Davis' submitted evidence, the court found that Mr. Davis failed to present any evidence of false statements in Bell's affidavit. (Add. 11 R. Doc. 57, at p. 8)

The court ignored relevant evidence submitted by Mr. Davis. For instance, one of Mr. Davis' central arguments that Bell was untruthful in his affidavit to the judge was his sworn assurance that dynamic no-knock warrants "greatly enhance" and "increase the safety of the executing officers and occupants." (App. 407 R. Doc. 34-6, at p. 3) This statement is false or at least disputed even within the LRPD. (App. 412, R. Doc. 34-7, at p. 4) In March 2003, Sgt. Steven McClanahan, a LRPD SWAT supervisor drafted a protocol treatise entitled "Tactical Explosive Breaching: An Introduction on the use of Explosives in Today's Police Department," in which he wrote:

> Explosive breaching should not be considered for use on non-fortified entry points unless such use is necessary for the safety of the officers and/or hostages. (App. 412 R. Doc. 34-7, at p. 4)

The district court also received February 2014 LRPD SWAT documents which support Mr. Davis' position that Bell was untruthful regarding any enhanced safety resulting from the use of no-knock warrants. (App. 424 R. Doc. 34-8, at p. 1) This official police document supports Mr. Davis' position that mandating SWAT

14

dynamic entries for all narcotics search warrants—regardless of the particular circumstances of any given suspect's residence—and substantiates the recklessness of the defendants' actions. Indeed, according to SWAT supervisor Lt. Timothy Calhoun, with warrant service, it is "ALWAYS safer to bring suspect(s) out to us, rather than go into the unknown after them." (App. 424 R. Doc. 34-8, at p. 1) (all caps in original)

This evidence is material because if a jury accepted it, it would mean that Bell did not have a legitimate basis for seeking a no-knock warrant for Mr. Davis' home and felt the apparent need to misrepresent the relative safety of explosive narcotics executions in order to increase the likelihood of obtaining one. The dispute here is genuine insofar as Bell claims he obtained probable cause in good faith but his claims are contradicted by misrepresentations in his affidavit to the court. This constitutes a genuine dispute regarding what Bell knew and what he claims he did not know. See *Wealot v. Brooks*, 865 F.3d 1119, 1126 (8th Cir. 2017).

2. The District Court Found that there Was No Evidence that Bell or Ison Were Responsible for the Execution of the No-Knock Raid on Mr. Davis' Home But Rather it Was SWAT who Executed the Raid

Where a central material fact question surrounds the identity of the individual actually responsible for executing the September 2017 no-knock search warrant— one featuring the detonation of debilitating explosive devices for entry—on Mr. Davis' home, court claims "there is no evidence that Bell or Ison were responsible

15

for the decisions made by the SWAT team." (Add. 16 R. Doc. 57, at p. 13)  This is not accurate, however, as Mr. Davis presented evidence in the form of express written policies that the LRPD narcotics unit is responsible for conducting narcotics raids and obtaining search warrants, including search warrants which require forced entry execution.  (App. 163-165 R. Doc. 34-1, at pp. 66-68)

And yet, rather than accepting Mr. Davis' non-movant evidence, the court went out of its way to find that it is SWAT—and not narcotics—that executes no-knock search warrants. (Add. 16 R. Doc. 57, at p. 13)  To this end, the court accepted Bell's summary judgment affidavit wholesale, finding that "[a]s Bell stated in his affidavit, 'The LRPD SWAT Unit decided how to execute the warrant, including the manner of entry.'"  (Add. 16 R. Doc. 57, at p. 13)  Citing *Z.J. v. Kan. City Bd. of Police Comm'rs*, 931 F.3d 672, 685 (8th Cir. 2019) for support, the court states in its dismissal order that narcotics detectives "are not automatically responsible for all the actions of the SWAT team officers." (Add. 16 R. Doc. 57, at p. 13).

This may be true but neither are narcotics detectives automatically immune. The court, thus, misconstrues and oversimplifies the *Z.J.* holding.  In that case, the Eighth Circuit did not seem to be creating a new rule whereby SWAT officers are the only type of officers who can be liable for injuries flowing from no-knock search warrants, *ipso facto*.  Rather, it would appear that the ruling in *Z.J.* was fact-specific and, thus, the Court's decision applied to SWAT officers, based on those particular

16

circumstances. Here, the circumstances include not only the aforementioned policy but also the affidavit Bell himself submitted wherein described his personal experience executing no-knock warrants. (App. 406 R. Doc. 34-6, at pp. 2-3)

Evidence that narcotics detectives are responsible for the tactics and execution of no-knock search warrant is material because if a jury accepted it and understood its implications, it would mean that Bell, Hardman and Ison—all party defendants— are culpable for Mr. Davis' injuries and it was an error embrace defendants' "empty chair" theory at this stage of litigation. The dispute here is genuine insofar as Bell claims SWAT executed no-knock warrants but he is contradicted by LRPD policy and other evidence, including his own affidavit attestations to the judge boasting of his experience executing no-knock warrants. (App. 406 R. Doc. 34-6, at pp. 2-3)

3. The District Court Found That Disgraced CI Kenneth Ray Robinson was Reliable in September 2017 and Understood by Narcotics Detectives such as Bell to be Reliable in September 2017

In its dismissal order, the district court uncritically accepts defendants' statement of fact that Robinson "was reliable." (Add. 5 R. Doc. 57, at p. 2) The district court made impermissible favorable inferences about central issues for defendants in its order, stating "[e]ven if the [cooperating individual] did not actually buy cocaine from Davis during the controlled buy, Bell had a good faith belief that the buy occurred…" (Add. 14 R. Doc. 57, at p. 11) The court seems willing to give defendants a pass on fairly crucial evidentiary standards.

17

However, Mr. Davis produced evidence which showed that it was known at the LRPD since 2012 that Robinson was unreliable because not only had he threatened a prosecutor with violence while being held on a deception crime charge but he also attempted to frame another inmate for the death threats he made. (App. 643-644 R. Doc. 34-16, at pp. 19-20) The court disregarded this evidence.

LRPD narcotics detectives agree that Robinson was terminated for his death threat-frame up in 2012, years after the crime but they cannot agree on when. Bell testified that Robinson may have been terminated in 2016, prior to the raid on Mr. Bell's home. (App. 341 R. Doc. 34-3, at p. 139) However, based on a LRPD CI termination memo[1], Robinson was terminated on or about March 6, 2019. (App. 432 R. Doc. 34-11)

Regardless, Robinson was tainted and inherently unreliable in August-September 2017 when he conspired with defendants to frame Mr. Davis for monetary gain. Where there is evidence that a narcotics officer knew or should have known of a CI's disqualifying criminal history, it was in error for the district court to accept defendants' facts over Mr. Davis' and to infer that neither Bell, Hardman nor Ison was aware of Robinson's history, despite its presence in his criminal record

---

[1] The 03/06/2019 LRPD termination memo produced in discovery bears a "KRR" bates-stamp marker which indicates production related to Robinson. (App. 432 R. Doc. 34-11)

possessed by those same narcotics detectives. (App. 642-644 R. Doc. 34-16, at pp. 18-20)

Evidence which tends to establish that in September 2017 Bell, Hardman and Ison were aware of the patent unreliability of Robinson and, thus, the risk to the constitutional rights of Little Rock residents, such as Mr. Davis, is material because if a jury accepted it, it would mean that Bell did not have a legitimate basis for seeking a no-knock warrant for Mr. Davis' home and that he perhaps intentionally used a tainted, unreliable CI because he was operating in bad faith. Moreover, if the court was aware of Robinson's untruthful background, it may have refused to issue the no-knock warrant for Mr. Davis' home or requested another means of establishing probable cause. The dispute here is genuine insofar as Bell advised a court of law that Robinson was trustworthy and subsequently obtained of the no-knock warrant where Mr. Davis maintains that Robinson is clearly unreliable and Bell intentionally omitted this fact to get the warrant.

4. The District Court Erroneously Found that Bell "Thoroughly" Searched CI Robinson Prior to the Alleged Controlled Buy at Mr. Davis' Home Despite Considerable Evidence to the Contrary

The district court found that Bell "thoroughly searched the CI…according to LRPD policy" prior to the alleged controlled buy occurring at Mr. Davis' home. (Add. 5 R. Doc. 57, at p. 2) This is finding by the court is taken straight from Bell's affidavit in support of summary judgment. (Add. 5 R. Doc. 57, at p. 2; App. 96 R.

19

Doc. 32-1, at p. 3, ¶ 7) However, the problem for Bell is that he had already given his deposition months prior and testified quite differently. (App. 203, R. Doc. 34-3)

Based on Bell's deposition testimony, his search of Robinson's person was not thorough because, again, it allowed for Robinson to taint the buy and falsely implicate Mr. Davis by bringing contraband into the process and claiming it was purchased from Mr. Davis. (App. 269-272 R. Doc. 34-3, at pp. 67-70) Bell testified an understanding of the risk posed by his chosen method: it could lead to the arrests of people who should not be arrested. (App. 269-272 R. Doc. 34-3, at pp. 67-70)

Another narcotics detective, Robert Littleton, testified to clearly insufficient searches of CIs as well, which supports Mr. Davis' Fourth Amendment and *Monell* claims. (App. 546 R. Doc. 34-22, at 31:11-33:23) Rather than have a CI take off their shoes to determine if they are carrying contraband, Littleton instead watches them to see if they are walking funny. (App. 546 R. Doc. 34-22, at 33:12-16)

This evidence is material because if a jury accepted it, it would mean that any alleged legitimate basis for seeking a no-knock warrant for Mr. Davis' home could very likely be legally "invalid" based on his obviously faulty approach to safeguarding a suspect's constitutional rights which allows for CIs to taint the process. (App. 302 R. Doc. 34-3, at p. 100) The dispute here is genuine insofar as Bell claims he obtained probable cause in good faith but his claims are contradicted by his intentionally neglectful and unconstitutional CI search.

20

5. The District Court Failed to Address or Rule upon Mr. Davis' Civil Conspiracy Allegations Contained in Count IV

And the failure to analyze Mr. Davis' civil conspiracy clams resulted in the improper dismissal of Hardman whom—by virtue of his knowledge of narcotics detective practices and the involvement of all narcotics detectives in each narcotics case—remained a viable co-conspirator and, thus, viable party defendant. Once again, they all work on each other's cases in the narcotics unit. (App. 368 R. Doc. 34-4, at 66:11-16 ("…we all went on the same warrants")).

II. THE DISTRICT COURT ERRED IN ACCEPTING AND NOT REJECTING ROBERT BELL'S AFFIDAVIT AND EXHIBIT "A" AS HEARSAY

On a motion for summary judgment, "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). The court is to "consider only admissible evidence and disregard portions of various affidavits and depositions that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions as fact." *Howard v. Columbia Public School District*, 363 F.3d 797, 801 (8th Cir. 2004).

In support of summary judgment, Bell submitted an affidavit wherein he attests to learning about Mr. Davis via contact allegedly made by one of Mr. Davis' neighbors who complained about suspicious drug activity outside Mr. Davis'

21

apartment unit. (App. 94-95 R. Doc. 32-1, at pp. 1-2) According to Bell, this neighbor contacted Kenton Buckner via email. (App. 94; App. 100) Buckner then advised Bell of this information. (App. 94; Add. 5 R. Doc. 57, at p. 2) Bell then contacted the neighbor who directed Bell to another neighbor. (App. 95 R. Doc. 32-1, at p. 2) The other neighbor then told Bell the name of Mr. Davis' girlfriend, who lived with him. (App. 95 R. Doc. 32-1, at p. 2) According to Bell's affidavit, this is how he learned about Mr. Davis (neighbor #1 to Buckner; Buckner to Bell; Bell to neighbor #1; neighbor #1 to Bell; Bell to neighbor #2). Mr. Davis disputes this and claims he was set up by Bell and Robinson, a CI known in 2017 to be unreliable.

A. The District Court Erred in Accepting and Relying Upon Movant Bell's Hearsay Document

Bell's affidavit does not pass the admissibility standard reflected in Rule 56 because it is a quadruple hearsay document and it is not based on personal knowledge. See *Erickson v. Farmland Indus.*, 271 F.3d 718, 728 (8th Cir. 2001). Unsworn statements are hearsay and not cognizable on summary judgment. See *Mays v. Rhodes*, 255 F.3d 644, 648 (8th Cir. 2001); see *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir. 1993)(inadmissible material not "properly available to defeat or support the motion."). Therefore, Bell's affidavit should have been rejected by the district court. And yet, not only was Bell's affidavit accepted by the court, but it actually relied very heavily on the hearsay-riddled submission,

22

forming the foundation for much of the court's analysis. (App. 5 R. Doc. 57, at p. 2)

In *Erickson*, an employment discrimination case, the plaintiff, Erickson, was charged with demonstrating that the reasons proffered for his demotion by his employer, Farmland, were pretextual because they had no basis in fact. See *Erickson*, 271 F.3d at 727. In short, he had to show that his past performance was not the primary factor in Farmland's decision. To this end, Erickson submitted an affidavit from his lawyer to which a typed transcript of a taped telephone conversation between two co-workers was attached as an exhibit. See *Erickson*, 271 F.3d at 727. The Court made quick work of the inadmissible document:

> Erickson attempts to discredit Farmland's allegation that Gales called Cleberg and complained about Erickson's performance.
>
> *****
>
> In response [to Farmland], Erickson offers an excerpt of a transcript of a telephone call that he taped in which a Farmland employee, Jerry Rollings, said he talked to Gales and Gales said that "he has not made any phone calls." The copy of the transcript in the record is attached to the affidavit of Erickson's attorney, which simply lists it as an exhibit.
>
> *****
>
> Erickson offers the transcript for the truth of Gales's putative statement that he had made no phone calls, which in turn depends on the truth of Rollings's reportage. Neither statement was under oath. The transcript thus contains hearsay about hearsay. The lawyer's affidavit to which it is attached and Mrs. Erickson's affidavit contain no pretense that either has personal knowledge about the

23

subject in issue—whether Gales called Cleberg to complain about Erickson.

\*\*\*\*\*

Erickson offers these unsworn, out-of-court statements for the truth of the assertions in them. This is hearsay, Fed. R. Evid. 801(c), and we cannot base a decision on it. See p. 12, supra. If Erickson meant to rely on statements by these men to avoid summary judgment, he should have obtained their affidavits or depositions.

*Erickson*, 271 F.3d at 727-28.

The district court erred in accepting and not rejecting the affidavit and hearsay exhibit submitted by Bell in support of summary judgment.

B. "11th Hour" Disclosure of Dubious Email Combined with Utter Lack of Supporting Documentation in the Record Creates an Inference that the Events Described in the Email Did Not Occur

In addition to its evidentiary infirmities, Bell's self-serving affidavit is also quite dubious because Bell never memorialized in the official case file any aspect of any contact or discussion he allegedly had with the "citizen" or the "neighbor." Nor did he include this information in his affidavit to the judge. (App. 607 R. Doc. 40, at p. 2) So, even if Bell's affidavit was not rightfully rejected or stricken outright, Mr. Davis was nonetheless entitled to the common sense inference that either Bell never had the discussion or he did and the "neighbor" provided information favorable to Mr. Davis. See *Wiley v. United States*, 20 F.3d 222, 227 (6th Cir. 1994)(absence of documents evidence that event normally described did not occur).

24

III. **THE DISTRICT COURT ERRED IN DISREGARDING PLAINTIFF'S EXPERT'S POLICE PRACTICES UNREBUTTED EXPERT OPINIONS AND THE UNREBUTTED OPINIONS OF A FORMER LRPD CHIEF OF POLICE CRITICAL OF THE DEPARTMENT**

The opinion of a qualified expert witness is admissible if: (1) it is based on sufficient facts or data; (2) it is the product of reliable principles and methods; and (3) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702; *Kuhn v. Wyeth, Inc.*, 686 F.3d 618, 625 (8th Cir. 2012). Courts routinely rely on expert's reports on motions for summary judgment. See *DG&G, Inc. v. FlexSol Packaging Corp. of Pompano Beach*, 576 F.3d 820, 827 (8th Cir. 2009). Unrebutted expert opinion raises a genuine issue of material fact and, thus, as a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving party's case. See *Vasudevan Software v. MicroStrategy, Inc.*, 782 F.3d 671, 682 (Fed. Cir. 2015).

Mr. Davis disclosed his police practices expert, Tom Tiderington, on December 27, 2022. Mr. Tiderington is a former police chief with impeccable credentials and years of law enforcement experience in the execution of narcotics search warrants, the precise aspect of police work at issue here. (App. 438-439 R. Doc. 34-13, at pp. 3-4) None of the defendants retained a police practices expert nor disclosed any expert opinions in defense of the acts and omissions described in Mr. Davis' 53-page, illustrated complaint. (App. 436-488 R. Doc. 34-13, at pp. 1-53)

25

Mr. Tiderington's several unrebutted expert opinions are ones that go straight to the issues of the case. (App. 436 R. Doc. 34-13) For instance, Mr. Tiderington noted contradictions between the known facts and Bell's no-knock affidavit to the court which is inconsistent with proper police protocol. (App. 447-448 R. Doc. 34-13, at pp. 12-13) Mr. Tiderington described omissions of fact by Bell which were inconsistent with LRPD policy and protocol. (App. 449-450 R. Doc. 34-13, at pp. 14-15) Robinson had a history whereby, if known to Bell and others, disqualified him as a CI, and Bell's failures to search Robinson's person exacerbated the already unreasonable risk posed by Robinson, according to Mr. Tiderington. (App. 450-457 R. Doc. 34-13, at pp. 15-22) And yet, the district court inexplicably did not accept any of this unrebutted evidence or distinguish it in any way. (Add. 5 R. Doc. 57, at pp. 1-16). It completely ignored Mr. Tiderington's opinions, not even mentioning it in its order.

In opposition to summary judgment, Mr. Davis submitted a declaration from a former LRPD chief of police, Keith Humphrey, who attested to historical deficits at the LRPD in terms of random use of explosive devices, a profound lack of oversight for narcotics detectives and their CIs and a failure to properly articulate the need for a no-knock exception to the standard knock-and-announce warrant execution. (App. 564 R. Doc. 34-26, at p. 1 ¶¶ 4-5) The district court did not accept

26

this evidence or distinguish it in any way. (Add. 5 R. Doc. 57, at pp. 1-16) It completely ignored this material evidence, not even mentioning it in its order.

## IV. THE DISTRICT COURT ABUSED ITS DISCRETION IN AWARDING ATTORNEY'S FEES BECAUSE DEFENDANTS FAILED TO PROVE ANY ASPECTS OF THEIR REQUEST WERE REASONABLE

The United States Supreme Court has "directed lower courts to make an initial estimate of reasonable attorney's fees by applying prevailing billing rates to the hours reasonably expended" in the matter. *Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S. Ct. 939, 944 (1989). "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984). The courts may then adjust this lodestar calculation by other factors. *Blanchard*, 489 U.S. at 94.

First, the court awarded attorney's fees despite the fact that defense counsel never submitted any billing records, hourly time slips or the like. Thus, though Mr. Davis was ordered to pay fees, neither he nor his counsel were ever advised as to any hours spent nor any amount sought. Second, the court failed to perform lodestar analysis to determine fee reasonableness, which it was required to do. Defense counsel never even identified the lawyer who put in the hours or his or her years practicing etc. Third, because defense counsel sought to by paid for a deposition to willfully boycotted, the court's granting of their sanctions motion results in a

27

windfall because they are either seeking double fees for deposition preparation or a single fee for preparation for a deposition they willfully failed to attend.

<u>CONCLUSION</u>

Mr. Davis respectfully requests that this Honorable Court reverse the district court's dismissal of his case and vacate the district court's attorney fees award.

Respectfully submitted,

LAUX LAW GROUP
400 W. Capitol Avenue, Suite 1700
Little Rock, Arkansas 72201
Telephone: (501) 242-0750
Facsimile: (501) 372-8234
E-mail: mlaux@lauxlawgroup.com

By:    /s/ Michael J. Laux
Michael J. Laux, No. 6278834

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 19, 2023, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Michael J. Laux
Michael J. Laux, No. 6278834

28

<u>VERIFICATION</u>

I do hereby certify that Plaintiff-Appellant's Opening Brief and Addendum have been scanned for viruses and they are virus-free in PDF format.

/s/ Michael J. Laux
Michael J. Laux, No. 6278834

29

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(5) of the Federal Rules of Appellate Procedure, this is to certify that this Brie of proportionately spaced typeface is 14 point Times New Roman.  Pursuant to Rule 32(a)(7)(B), this Brief does not exceed 13,000 words, and actually contains 6776 words inclusive, per the word count of the word-processor system used to prepare the Brief.  The Brief was prepared using Microsoft Word.

ADDENDUM

31